## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **GREEN PLAINS OBION LLC,** | ) | **CASE NO. 8:10CV251** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **OBION GRAIN CO., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Plaintiff's Statement of Objections to Magistrate Judge's Order (Filing No. 16), and on the Defendant's Motion to Dismiss and, in the Alternative, Motion to Transfer (Filing No. 20). For the reasons discussed, the Plaintiff's objections will be overruled, the Motion to Dismiss will be granted in part, and the action will be transferred to the Western District of Tennessee.

## BACKGROUND

### I.      Factual Background

The following facts are based on the allegations in the Complaint (Filing No. 1 at 4-14), which the Court accepts as true when addressing the motion to dismiss.

Plaintiff Green Plains Obion LLC ("GPO") is a Tennessee limited liability company with its principal place of business in Omaha, Nebraska. GPO is a wholly-owned subsidiary of Green Plains Renewable Energy, Inc. ("GPRE"). GPRE also maintains its principal place of business in Omaha, Nebraska. GPRE is an ethanol producer engaged in the business of development, production, and marketing of corn-based fuel ethanol products. Through its subsidiaries, GPRE markets, sells and distributes corn-based ethanol fuel products on a national basis. GPRE owns and operates several ethanol production facilities including one in Obion, Tennessee ("Obion Facility"). GPRE acquired

the Obion Facility through acquisition of all the membership interests in Ethanol Grain Processors, LLC ("EGP").  Following the acquisition, GPO assumed operation of the Obion Facility.  GPO also assumed the obligations of a Corn Purchasing Agreement ("CPA") between EGP and the Defendant Obion Grain Co., Inc. ("Obion"), a Tennessee corporation with its principal offices in Obion, Tennessee.

Under the terms of the CPA, GPO agreed to buy up to a maximum of 3.5 million bushels of corn each year for use at the Obion Facility (hereinafter referred to as the "committed bushels").  Under the CPA, Obion was the exclusive supplier to GPO for all corn produced in seven counties surrounding the Obion Facility in Tennessee and Kentucky (hereinafter referred to as the "exclusion zone").  In addition to purchasing the committed bushels, GPO at times purchased additional corn from Obion.  On such occasions, the price of corn delivered by Obion was negotiated and agreed upon by the parties.  During the parties' course of dealing, a dispute arose as to whether the CPA prohibited GPO from purchasing corn from any other source within the exclusion zone. During the course of these disputes, Obion proposed several drafts of an "Addendum" to amend the CPA to clarify the rights and obligations of the parties, but the parties never reached an agreement.  GPO claims that by seeking to enforce the CPA as prohibiting GPO's purchase of corn from any other producer in the exclusion zone, Obion has had adverse impact on GPO's ability to purchase corn and has substantially affected the price of corn within the exclusion zone.  GPO seeks a declaration of the parties' rights and obligations under the CPA and seeks damages for breach of contract and unlawful restraint of trade.

II.      **Procedural Background**

GPO filed its Complaint in the District Court of Douglas County, Nebraska.  After

filing, GPO did not serve Obion, and instead mailed a demand letter and a date-stamped

copy of the Complaint to Obion and its attorneys.  Obion removed the action to this Court

and filed a Demand for Jury Trial on July 7, 2010.  Obion did not file an answer or

otherwise respond to the Complaint until September 24, 2010, when it filed its present

Motion to Dismiss or Transfer.

On September 2, 2010, GPO moved for entry of default on the grounds that Obion

waived service when it filed its jury demand.  The Magistrate Judge denied GPO's motion

(Filing No. 13), concluding that Obion did not waive its right to service of process and thus

could not be in default.  The summons was returned executed on Obion on October 6,

2010, within the time required by Federal Rule of Civil Procedure 4(m).

**DISCUSSION**

I.      **Objections to the Magistrate Judge's Order**

Federal Rule of Civil Procedure 72 governs nondipositive orders issued by

magistrate judges.  Rule 72(a) states that a district judge "must consider timely objections

and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

GPO objects to the Magistrate Judge's Order arguing that the Magistrate erred by

concluding that Obion did not waive its right to service by removing the case to federal

court.

The Court is not persuaded that the Magistrate Judge erred by failing to analyze

GPO's motion for entry of default under Nebraska law.  In support of its argument, GPO

cites 28 U.S.C. § 1448 which states that where a defendant has not been served prior to

removal, "such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court."   GPO also cites Federal Rule of Civil Procedure 4(h)(1)(A)[1], which, referring to Rule 4(e)(1), provides that unless federal law states otherwise, a corporation, partnership or association may be served by following state law for serving a summons in an action brought in the state where the district court sits or where service is made.  GPO argues that because Nebraska law equates a voluntary appearance to service, Obion was deemed served when it filed its jury demand.  The Court disagrees.  Both the statute and Rule 4(h) describe the manner in which service may be effected.  Regarding the process allowed by § 1448, "the perfection of process after removal is governed by federal law rather than state law."  *Velten v. Daughtrey*, 226 F. Supp. 91, 92 (W.D. Mo. 1964) (citing § 1448).  Further, Rule 4 merely authorizes service in conformity with state law.  This authorization affects the manner in which plaintiffs may effect service, not the manner in which defendants waive it.

Even if Nebraska law applies, the Court is not persuaded that a jury demand amounts to a voluntary appearance.  The Court notes that default judgments are disfavored, and should be a rare judicial act.  *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995). GPO cites no direct authority suggesting that filing a jury demand rises to the level of a voluntary appearance, obviating the need for service, under either Nebraska or federal law.  Accordingly, the Magistrate Judge's decision is not clearly erroneous or contrary to law.[2]

---

[1] GPO's Brief cites to Rule 4(h)(a)(A) which the Court presumes refers to Rule 4(h)(1)(A).

[2] The Court also notes that filing a jury demand in this case did not waive Obion's objections to personal jurisdiction.

**II.    Motion to Dismiss**

A.  Service of Process

GPO states that even if its objection to the Magistrate Judge's Order is denied, it properly served process upon Obion on October 1, 2010, and the summons was returned executed on October 6, 2010.  Service took place after Obion filed its Motion to Dismiss or Transfer, but within the time required by Rule 4(m).  In its Reply, Obion does not dispute that it was properly served.  Therefore, Obion's motions under Rule 12(b)(4) and (5) are denied as moot.

B.  Personal Jurisdiction

Obion argues that GPO has not met its burden for subjecting Obion to personal jurisdiction in this Court.  "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Wells Dairy, Inc. v. Food Movers Intern., Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004).  Further, "[a] federal court may exercise jurisdiction 'over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution.'" *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (quoting *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)).  The question of whether this Court has personal jurisdiction over Obion presents two issues: (1) whether the requirements of the Nebraska long-arm statute are satisfied, and (2) whether the exercise of jurisdiction over Obion will violate the Due

Process Clause.  Because Nebraska's long-arm statute[3] confers personal jurisdiction to

the "to the fullest extent permitted by the United States Constitution," the Court's analysis

need only address whether the exercise of personal jurisdiction over a defendant would

violate the Due Process Clause.  *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th

Cir. 2003) (citing *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612

(8th Cir. 1994)); *see also Wagner v. Unicord Corp.*, 526 N.W.2d 74, 77-78 (Neb. 1995).

Due process requires that a non-resident defendant have sufficient "minimum

contacts" with the forum state "such that the maintenance of the suit [in that state] does not

offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v.

Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463

(1940)).  *See also Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008)

("The Due Process Clause requires that 'minimum contacts' exist between the nonresident

---

[3] The statute states:

A court may exercise personal jurisdiction over a person:
    (1) Who acts directly or by an agent, as to a cause of action arising
from the person:
        (a) Transacting any business in this state;
        (b) Contracting to supply services or things in this state;
        (c) Causing tortious injury by an act or omission in this state;
        (d) Causing tortious injury in this state by an act or omission
outside this state if the person regularly does or solicits business,
engages in any other persistent course of conduct, or derives substantial
revenue from goods used or consumed or services rendered, in this state;
        (e) Having an interest in, using, or possessing real property in this
state; or
        (f) Contracting to insure any person, property, or risk located within
this state at the time of contracting; or
        (2) Who has any other contact with or maintains any other relation
to this state to afford a basis for the exercise of personal jurisdiction
consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536 (West, Westlaw through 1st special session 2009).

defendant and the forum state before the court can exercise jurisdiction over the defendant."). "The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction." *Dever*, 380 F.3d at 1073. "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Id.* (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). "In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Id.* (citing *Hall*, 466 U.S. at 414). Under either of these two theories, the defendant must have committed "some act by which the defendant purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Dever*, 380 F.3d at 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). "This purposeful availment must be sufficient to provide the defendant with fair warning that his activities might result in his being haled into court in that jurisdiction." *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476 (quoting *International Shoe Co.*, 326 U.S. at 320). *See also Dever*, 380 F.3d at 1073.

Taking the foregoing principles into account, the Eighth Circuit "instruct[s] courts to consider the following factors when resolving a personal jurisdiction inquiry: (1) the nature

and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Dever*, 380 F.3d at 1073-74 (internal quotation marks, brackets, and citation omitted). *See also Sybaritic, Inc. v. Interport Intern., Inc.*, 957 F.2d 522, 524 (8th Cir. 1992) (explaining that this five-factor framework "incorporates the notions of both 'minimum contacts' and 'fair play and substantial justice'"). The first three factors are given more weight than the remaining factors, although factor three may be inapplicable if jurisdiction is predicated on the theory of general jurisdiction. *Dever*, 380 F.3d at 1074.

GPO has not shown that Obion had sufficient contacts with this forum to support a finding of personal jurisdiction. The Complaint itself alleges no connection to Nebraska other than the fact that GPO and GPRE both have their headquarters in Omaha. The Complaint also states that "[f]or purposes of the CPA, Plaintiff GPO is a successor to EGP." (Filing No. 1, Compl. ¶ 10.) The Complaint does not allege EGP is located in Nebraska, and nothing indicates that Obion directed its original efforts negotiating the CPA in this forum. Instead, GPO argues that personal jurisdiction stems from Obion's contacts with GPO *after* the dispute arose regarding the interpretation of the CPA. Such contacts are insufficient for at least two reasons. First, the content of these communications has not been disclosed and it is difficult, if not impossible, for the Court to assess the nature and quality of these contacts, their quantity, and their relation to Plaintiffs' causes of action, as the Eighth Circuit instructs. Second, contacts by phone and mail, standing alone, are generally "insufficient to justify exercise of personal jurisdiction under the due process clause." *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (quoting *Porter v. Berall*,

293 F.3d 1073, 1076 (8th Cir. 2002)). *See also Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995) ("The use of interstate facilities, such as telephones or mail, is a 'secondary or ancillary' factor 'and cannot alone provide the minimum contacts required by due process.'" (citations and internal quotation marks omitted)).   The dispute in this case involves the sale of corn to a GPO Facility in Tennessee from suppliers in Tennessee and Kentucky.  Even assuming each of Obion's contacts with GPO is related to the present dispute, the contacts were made with the purpose of furthering business outside Nebraska.[4]  It cannot be said that Obion's contacts were made with the purpose of availing itself of conducting business within Nebraska or invoking the protections of its laws.   Therefore, the Court does not have personal jurisdiction over Obion.

C.  Transfer of Venue

The Court nevertheless declines to dismiss for lack of jurisdiction in this instance, because the interests of justice warrant a transfer to the United States District Court for the Western District of Tennessee.  Because the Court finds personal jurisdiction lacking, transfer is governed by 28 U.S.C. § 1631.  Under § 1631, a federal court has the power to transfer a case in which it lacks jurisdiction to the proper federal court, provided that the case would have been timely filed in the proper federal court originally.  "The transfer statute is mandatory, indicating that a court '*shall*, if it is in the interest of justice, transfer such action or appeal to *any other such court* in which the action or appeal could have

---

[4] *Compare Rural Media Group, Inc. v. Performance One Media, LLC*, 697 F. Supp. 2d 1097, 1107 (D. Neb. 2010) (concluding that contacts by email, mail, and phone were sufficient when they were made with the purpose of furthering business in the forum state and perpetuating a misleading statement made in the forum state).

9

been brought at the time it was filed.'" *Lopez v. Heinauer*, 332 F.3d 507, 511 (8th Cir. 2003)

(*quoting* § 1631) (emphasis in original).  The Court concludes that transfer, rather than

dismissal, saves time and resources of both parties.  As noted, the dispute centers on corn

supplied to the Obion Facility from suppliers in Tennessee and Kentucky and Obion is a

Tennessee corporation.  Thus, the case could have been brought in the district to which

Obion requests transfer.  In the interest of justice, the Court will transfer this action to the

United States District Court for the Western District of Tennessee.

Accordingly,

IT IS ORDERED:

1.      The Plaintiff's Statement of Objections to Magistrate Judge's Order (Filing
        No. 16) is overruled;

2.      Defendant's Motion to Dismiss, and in the Alternative, Motion to Transfer
        (Filing No. 20) is granted in part; and

3.      The Clerk of the Court is directed to transfer this action to the United States
        District Court for the Western District of Tennessee.

DATED this 15th day of November, 2010.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge